MARGARET FORD BROWN *v.* TURNER BROWN.

[43 South., 178.]

EQUITY JURISPRUDENCE. *Mortgages. Satisfaction. Subrogation.*

A party to a void marriage who, honestly believing that he is the husband of the other party thereto, on her verbal promise to convey him a half interest in the property, satisfies a mortgage on her land, is a mere volunteer and not entitled to be subrogated to the rights of the mortgagee.

FROM the chancery court of Washington county.

HON. PERCY BELL, Chancellor.

Turner Brown, the appellee, was complainant in the court below, and Margaret Ford Brown, the appellant, was defendant there. From a decree overruling the demurrer of defendant to the bill of complaint, defendant appealed to the supreme court.

The complainant, Turner Brown, filed a bill in chancery against Margaret Ford Brown, wherein he alleged that he had married her in Washington county in 1899 and had lived with her on her premises for six years continuously, when she left him, and moved to Memphis, Tennessee, to live; that at the time of his marriage with her, she fraudulently represented to him that she was unmarried and legally capable of entering into a marriage contract under the laws of this state; that at the time of his marriage with her, she owned certain real estate in Greenville, which was mortgaged to the extent of $600, practically its entire worth; that, after the marriage, believing himself to be her husband, and desiring to provide a homestead for himself and his supposed wife, the defendant, he proceeded with diligence and at her special instance and request to work out and pay off the mortgage indebtedness with his own funds and proceeds of his labor, she promising to convey him a half interest in the property. The bill further alleged that at the time of

his formal marriage with her she had a husband named Thomas Ford, having never been divorced from him, and her marriage with complainant was not in ignorance of law on her part, but for the fraudulent purpose of having her property redeemed from the mortgage through his labor and money; that, although the mortgage has been thus fully paid, she has declined to convey to him any interest whatever in the realty; has left him to go to her husband, Thomas Ford, in Memphis; and, on the ground that her marriage with complainant was illegal, has instituted proceedings for its annullment in Washington county against complainant. The bill further recited that as a result of all the foregoing, complainant finds that he is to be without a wife, and all of the money he has paid on the land, and his equitable interest therein, unless equity comes to his relief. The bill prayed for an equitable lien on the land by way of subrogation for the full amount paid out in settlement of the mortgage by complainant, and that the land be sold to satisfy the same.

The defendant, Margaret Ford Brown, demurred to the bill, on the ground that the allegations therein did not authorize subrogation, and that there was no equity on the face of the bill.

*Campbell & Cashin,* for appellant.

The bill shows that the appellee, Turner Brown, supposing himself to be the legal husband of the appellant, proceeded to work out and pay off a mortgage indebtedness upon appellant's land, because of his desire to provide a home for himself and her, and because of her promise to convey him a half interest in said property. The bill does not state whether the appellant's alleged promise of a half interest was verbal or written, but this is immaterial, inasmuch as the bill does not seek to enforce the specific performance of any promise on the part of appellant to convey a half interest in the property to appellee. If the promise was made in writing, the bill does not

seek to enforce it; and if it was a verbal promise, of course it could not be enforced. Appellee only seeks to be subrogated to the mortgage which he alleges was paid off by him.

Nor does the bill allege that any agreement existed between appellant and appellee that the mortgage should be kept alive for appellee's benefit, nor that there was any promise or agreement on appellant's part to repay to appellee the money he paid on the mortgage indebtedness. The bill merely alleges that the inducement leading appellee to pay off the mortgage debt was to provide a home for himself and appellant, and to receive a half interest in the property.

We think the facts in this case bring it fairly within the rule announced by this court in *Berry* v. *Bullock,* 81 Miss., 463, s.c., 33 South., 410. The bill does not make out a case for legal or conventional subrogation. It is framed expressly on the theory that the appellee paid off the mortgage because of his desire to provide a home for himself and appellant, and because of appellant's promise above mentioned. No assignment of the mortgage to appellee is alleged in the bill; but, on the contrary, the bill distinctly alleges that the mortgage was satisfied and discharged.

Appellee must be held to have carved out his own security, and paid off the mortgage debt, not on the hope of any subrogation, but on the hope of securing a half interest in the property.

In the case of *Ætna Insurance Co.* v. *Middleport,* 124 U. S., 534, cited in the opinion of this court in *Berry* v. *Bullock, supra,* the United States supreme court said, "The doctrine of subrogation in equity requires, (1) that the person seeking its benefit must have paid a debt due to a third party before he can be substitued to that party's rights, and (2) that in doing this he must not act as a mere volunteer, but on compulsion, to save himself from loss by reason of a superior lien or claim on the part of the person to whom he pays the debt, as in case of sureties, prior mortgages, etc. The right is never accorded

in equity to one who is a mere volunteer in paying a debt of one person to another." In *Sanford* v. *McLean,* 3 Paige, 122, cited by the United States supreme court in *Ætna Insurance Co.* v. *Middleport, supra,* Chancellor WALWORTH said, "It is only in cases where the person advancing money to pay the debt of a third party stands in the situation of a surety, or is compelled to pay to protect his own rights, that a court of equity substitute him in the place of the creditor as a matter of course, without any agreement to that effect. In other cases the demand of a creditor which is paid with the money of a third person, and without any agreement that the security shall be assigned or kept on foot for the benefit of such third person, is absolutely extinguished."

In Sheldon on Subrogation, sec. 240, it is said, "the doctrine of subrogation is not applied for a mere stranger or volunteer who has paid the debt of another without any assignment or agreement for subrogation, without being under any legal obligation to make payment, and without being compelled to do so for the preservation of any right of property of his own."

In *Suppiger* v. *Garrels,* 20 Bradwell, Ill. App., 625, it is said, "Subrogation in equity is confined to the relation of surety and guarantor; to cases where a person to protect his own junior lien is compelled to remove one which is superior; and to cases of insurance. One who is under no legal obligation to pay the debt, is a stranger, and if he pays the debt, he is a mere volunteer."

As stated in *Berry* v. *Bullock, supra,* "subrogation is not a universal remedy for parties who have lost their money. It has its sphere of relief plainly limited by its nature. It is the creature, not of contract, but of equity. But equity cannot enforce subrogation on parties. The case must be one which on its facts fits perfectly in with the nature and purpose of subrogation."

Appellant was under no necessity to pay off the mortgage. He had no interest to protect by so doing, except such as

might rest on the promise of appellant to convey to him a half interest in the property; and if she failed to convey, in accordance with her promise, that, in itself, does not entitle the appellee to subrogation.

*Hugh C. Watson,* for appellee.

Appellee's bill was maintainable on three grounds:

1. Because of appellant's promise that if appellee would pay off the mortgage she would convey to him a half interest in the property. Although this promise, being verbal, would not be enforceable by bill for specific performance, it would be, and was, a sufficient promise upon which to rest the equitable relief of subrogation. *Allen* v. *Gaylor,* 24 South. Rep., 512; *McMillan* v. *Gordon,* 4 Ala., 716; *Fuller* v. *Hollis,* 57 Ala., 430.

2. The bill was maintainable because the husband, on marriage to the wife, had vested in him a peculiar estate or interest in the property in question. This estate is very much like the estate of curtesy at common law. While, under the statute law of this state, the husband and wife are permitted to own separate property, the homestead is conserved to both of them by the statute, and each is made a statutory heir of the other. The estate of curtesy is of course similar to the estate of dower, in contemplation of law. And the courts have held that the holder of a dower interest will be subrogated to mortgages that may be retired by the holder of such interest. Sheldon on Subrogation, secs. 51, 104, 114; *Becker* v. *Carey,* 36 Atl., 770.

3. The bill was maintainable on the ground of fraud practiced upon the appellee. A fraud was perpetrated upon him by his being led to believe that appellant could and did lawfully marry him, whereby he was induced to put his money into the retirement of the mortgage. A second fraud was perpetrated upon him by appellant when she promised to convey to him an interest in the property if he would redeem it from

the mortgage, which conveyance she refused subsequently to execute.

Whitfield, C. J., delivered the opinion of the court.

The marriage of the parties was null and void. The appellee was an entire stranger and pure volunteer. He had no interest whatever in the property, and all his payments were made as a simple volunteer. The case was precisely within the principles announced in the case of *Berry* v. *Bullock*, 81 Miss., 463, 33 South., 410, and the authorities therein cited.

*The decree is reversed, and demurrer sustained, and the bill dismissed.*